UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMBER KELSEY,<br><br>                    Plaintiff,<br><br>          v.<br><br>DISTRICT OF COLUMBIA,<br><br>                    Defendant. | Civil Action No. 13-1956 (BAH)<br><br>Judge Beryl A. Howell |

**MEMORANDUM OPINION**

The plaintiff, Amber Kelsey, brings this action under the Individuals with Disabilities Education Act, as amended, 20 U.S.C. §§ 1400 *et seq*. ("IDEA"), against the District of Columbia seeking a reversal of a Hearing Officer Determination ("HOD") issued on July 18, 2013, by the District of Columbia Office of the State Superintendent of Education, Office of Review and Compliance, Student Hearing Office. The HOD awarded the plaintiff 96 hours of speech-language services by a certified speech pathologist as compensatory education services for the District of Columbia Public Schools' ("DCPS") failure to provide a free appropriate public education ("FAPE") between March 19, 2007 and June 2008.[1] *See* Administrative Record ("AR") at 20, ECF No. 16-1.[2] Pending before the Court are the plaintiff's Motion for Summary Judgment, ECF No. 24, and the defendant's Cross Motion for Summary Judgment, ECF No. 27. The Magistrate Judge to whom these motions were referred submitted a report recommending that the plaintiff's motion be denied and the defendant's motion be granted. *See*

---

[1] The finding that the defendant failed to provide a FAPE was addressed in *Clay v. District of Columbia*, Memorandum and Order, No. 09-1612 (D.D.C. April 24, 2013), ECF No. 59.
[2] The Administrative Record in this case consists of a total of 1335 pages and is docketed in 27 parts at ECF Nos. 16–18.

1

Report and Recommendation (January 13, 2015), ECF No. 32. The plaintiff has objected to the report in its entirety. *See* Pl.'s Objections to the Report and Recommendations of the Magistrate Judge ("Pl.'s Obj."), ECF No. 33. For the reasons explained below, the Court adopts the Report and Recommendation. Accordingly, the plaintiff's Motion for Summary Judgment is denied and the defendant's Cross-Motion for Summary Judgment is granted.

## I.     BACKGROUND

The background of the present dispute has been described in the Report and Recommendation and by this Court in its prior decision in *Clay v. District of Columbia*, Memorandum and Order, No. 09-1612 (D.D.C. April 24, 2013), ECF No. 59. Previously, this Court ruled that the plaintiff "was denied a FAPE by the defendant during the period between March 19, 2007 and June 2008 because of the denial of speech therapy." *Id.* at 32. Specifically, "the defendant failed to implement [the plaintiff's] 2007 [Individualized Education Program], which required speech therapy for [the plaintiff]." *Id.* The case was remanded to a Hearing Officer to conduct "fact finding to establish the amount of speech and language therapy or other specialized instruction [the plaintiff] was deprived in the period between March 19, 2007 and June 2008, and determine the level of compensatory education services [she] requires to place her in the same position she would have been but for DCPS' IDEA violations during the period at issue." *Id.* at 33. The Hearing Officer was instructed that any award "must at least compensate [the plaintiff] for the 11.6 hours of speech therapy that the DCPS concedes that [the plaintiff] was deprived." *Id.* at 43.

### A.     Hearing

Upon remand, on June 12, 2013, a Hearing Officer for the District of Columbia, Office of the State Superintendent of Education, conducted a hearing to decide three issues:

    A. What was the appropriate level of speech/language services that [the plaintiff] should have received at [Rock Creek Academy] between March 19, 2007 and June 2008?

    B. What was the amount of speech and language therapy and other speech/language specialized instruction, as to which [the plaintiff] was deprived in the period between March 19, 2007 and June 2008?

    C. What is the level of compensatory education services that [the plaintiff] requires to place her in the same position she would have been . . . but for DCPS' IDEA violations during the period between March 19, 2007 and June 2008?

AR at 5–6. At the hearing, the plaintiff offered the testimony of the plaintiff's grandmother, Annie Clay, *see* AR at 1028, and an expert, Jay Lucker, *see* AR at 1100.[3] The defendant offered the testimony of Valerie Lobban, *see* AR at 1221, a special education coordinator, and Marva McIntosh, *see* AR at 1239, a speech and language pathologist. At the conclusion of the hearing, the defendant moved for a directed finding that the plaintiff was entitled to only 11.6 hours of compensatory education—the bare minimum required under this Court's original order. AR at 7. The Hearing Officer denied the defendant's motion and took the matter under advisement. *Id.*

In his 18-page opinion, the Hearing Officer first addressed the level of specialized speech services that the plaintiff should have received between March 19, 2007 and June 2008.[4] The Hearing Officer noted that while the plaintiff's September 2006 Individualized Education Program ("IEP") did not include a recommendation for speech-language services, plaintiff's September 2007 IEP recommended half-an-hour of speech

---

[3] The Hearing Officer was scheduled to hear the testimony of the plaintiff, *see* AR at 1019, but the plaintiff failed to attend the hearing.
[4] Since an IEP is reviewed "prospectively" and "not in hindsight," the Hearing Officer focused primarily on the information available to the plaintiff's IEP teams during the period between March 2007 and June 2008 to determine the level of services the plaintiff should have received during that time period. AR at 15.

services per week.[5]  AR at 13–14.  Nonetheless, the Hearing Officer concluded that the plaintiff's "September 20, 2007 IEP was not reasonably calculated to provide [the plaintiff with] educational benefits," because an August 2007 speech-language evaluation recommended that the plaintiff receive one hour of speech services per week.  *Id.* at 14.  The Hearing Officer also heard testimony from the plaintiff's expert, who opined that the plaintiff should have received five hours per week of speech-language services in order to help the plaintiff return to near grade-level.  *Id.*  The Hearing Officer discounted the expert's opinion, however, reasoning that the IDEA does not require a school to design an IEP to bring a child to near grade level, only to be reasonably calculated to provide some educational benefit.  *Id.* at 14–15  After weighing the evidence, the Hearing Officer found that "the preponderance of evidence establishes that . . . the provision of 60 minutes per week of speech-language services, as recommended by . . . [the] August 2007 evaluation . . . would have been reasonably calculated to provide [the plaintiff] educational benefits." *Id.* at 15.  The Hearing Officer also noted that this finding was consistent with the plaintiff's September 15, 2008 IEP, which also provided for the plaintiff to receive one hour of speech-language services.  *Id.*

Next, the Hearing Officer determined that the plaintiff's school was in session for sixty-four weeks between March 19, 2007 and June 2008, which amounted to the denial of sixty-four hours of speech language services.  *Id.* at 15–16.  Rather than conclude the inquiry, and award sixty-four hours of speech-language services, the Hearing Officer examined the evidence to determine the level of compensation services necessary to place the plaintiff in the position she would have been but for the defendant's IDEA violations.

---

[5] The failure by the defendant to provide these services resulted in the Court's prior finding that the defendant had failed to provide the plaintiff a FAPE.

The Hearing Officer credited the testimony of the plaintiff's expert, who noted that due to the plaintiff's "likely frustration," "resistance to learning," and the need to build confidence, would now require 1.5 hours of services for every hour of services missed previously. *Id.* at 17. Accordingly, rather than provide a compensatory award linked only to the number of hours the plaintiff was denied a FAPE, the Hearing Officer awarded the plaintiff 96 hours of speech language services (or 1.5 hours for each of the 64 hours otherwise missed). *Id.* at 20. The total award was approximately eight times the number of hours sought by the defendant. The compensatory education services to be provided include "instruction in phonemic awareness, general language comprehension, reading comprehension, sound-symbol association and such other speech-language deficits as may be decided appropriate by the provider and [the plaintiff]." *Id.*

### B. Report and Recommendation

The Magistrate Judge's Report and Recommendation would affirm the Hearing Officer, deny the plaintiff's motion for summary judgment, and grant the defendant's cross-motion for summary judgment. *See* Report and Recommendation. The Magistrate Judge determined that the Hearing Officer provided "a detailed, thorough analysis" of the case and the applicable issues and that his decision warranted "due weight." *Id.* at 11–12. Moreover, the Magistrate Judge found that the Hearing Officer appropriately focused on assessments and reports from the period at issue (March 2007 through June 2008). *See id.* at 13 ("[T]he Hearing Officer properly limited the scope of his review."). Similarly, the Magistrate Judge agreed with the Hearing Officer's decision to discount the plaintiff's expert's recommendation of five hours per week of speech-language services, stating that the recommendation "while ideal, ultimately, went too far" and was not required. *Id.* at 14. In total, the Magistrate Judge concluded that the Hearing Officer's

5

"determination was . . . reasonably calculated to compensate [the plaintiff] based on the evidence presented at the . . . hearing" and that the plaintiff "has failed to discharge 'the burden of persuading the court that the [H]earing [O]fficer was wrong.'" *Id.* at 12, 15 (citing *Patterson v. District of Columbia*, 965 F. Supp. 2d 126, 130 (D.D.C. 2013)).

## II.   LEGAL STANDARD

### A.   *De Novo* Review of Magistrate Judge's Report and Recommendation

When, as here, the Court has referred a case for full case management, the Magistrate Judge determines all motions and matters that arise in the case, except for those matters specified in Local Civil Rule 72.3, for which the Magistrate Judge will report proposed findings of fact and a recommendation for disposition.  LCvR 72.3.  This Local Civil Rule is consistent with Federal Rule of Civil Procedure 72(b), which provides for the referral of a pretrial matter "dispositive of a claim or defense" to a Magistrate Judge to hear and make a "recommended disposition."  FED. R. CIV. P. 72(b); *see also* LCvR 72.3(a)(3) ("At the request of the district judge to whom the case is assigned, a magistrate judge may . . . submit . . . proposed findings of fact and recommendations for the disposition of . . . motions for summary judgment . . . ."). Upon submission of the Magistrate Judge's recommended disposition, a "district judge shall make a *de novo* determination of those portions of a magistrate judge's findings and recommendations to which [an] objection is made," based upon the record before the Magistrate Judge or based upon further evidence that the district judge may receive in a new hearing.  LCvR 72.3(c).  In this case, the plaintiff has filed objections to the report and its recommendations in its entirety, and this Court will thus review the Report and Recommendation *de novo*.

### B.   **Summary Judgment Standard of Review of IDEA Hearing Officer Decision**

The parties in this case are seeking cross-motions for summary judgment based upon the

administrative record available to an IDEA Hearing Officer.[6]  The IDEA "'establishes various procedural safeguards that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" *District of Columbia v. Doe*, 611 F.3d 888, 890 (D.C. Cir. 2010) (quoting *Honig v. Doe*, 484 U.S. 305, 311–12, (1988)).  Any party aggrieved by a decision of a Hearing Officer under the IDEA may appeal the findings and decision to any state court or a United States district court.  20 U.S.C. § 1415(i)(2).  The party challenging the administrative decision has the burden of proving deficiencies in the administrative decision by a preponderance of the evidence.  20 U.S.C. § 1415(i)(2)(C)(iii).  When evaluating an appeal of an administrative decision, a court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  20 U.S.C. § 1415(i)(2)(C).  "Federal courts have interpreted 'appropriate relief' to include compensatory education as an equitable remedy to be granted upon finding that a child has been denied FAPE under the Act."  *Flores ex rel. J.F. v. District of Columbia*, 437 F. Supp. 2d 22, 30 (D.D.C. 2006) (quoting *Diatta v. District of Columbia*, 319 F. Supp. 2d 57, 64 (D.D.C. 2004)).

Although seeking judicial review of an administrative agency's decision by way of a summary judgment motion "is permissible under the IDEA, it is not a true summary judgment procedure.  Instead, the district court essentially conduct[s] a bench trial based on a stipulated record."  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir. 1993); *see also S.B. v. District of Columbia*, 783 F. Supp. 2d 44, 50 (D.D.C. 2011) ("As no new evidence has been submitted here, the Court will treat the parties' cross motions for summary judgment as motions

---

[6] As discussed below, the plaintiff attempted to supplement the administrative record with additional evidence, which was denied by the Magistrate Judge upon full briefing.  *See* Mem. Op. & Order, ECF No. 25.

for judgment based on the administrative record."). In other words, rather than applying the typical standard applicable to a summary judgment motion, which may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011), the Court in an IDEA case conducts a summary adjudication, *Phillips v. District of Columbia*, 736 F. Supp. 2d 240, 246 (D.D.C. 2010) ("If no additional evidence is introduced by the parties in a civil suit seeking review of an administrative decision, a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record.") (alterations and internal quotation marks omitted) (quoting *Thomas v. District of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C. 2005)); *District of Columbia v. Ramirez*, 377 F. Supp. 2d 63, 66–67 (D.D.C. 2005).

The court must resolve factual disputes based upon its own *de novo* review of the record and evaluation of the preponderance of the evidence, giving "due weight" to the findings of the IDEA Hearing Officer, depending upon the thoroughness and reasonableness of the administrative proceedings. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982); *Doe*, 611 F.3d at 897; s*ee also Roark ex rel. Roark v. District of Columbia*, 460 F. Supp. 2d 32, 38 (D.D.C. 2006).

### III. DISCUSSION

"'Compensatory education involves discretionary, prospective, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student.'" *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 523 (D.C. Cir. 2005) (quoting *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir.2003)). "Under the theory of 'compensatory

8

education,' courts and hearing officers may award 'educational services . . . to be provided prospectively to compensate for a past deficient program.'" *Reid*, 401 F.3d at 522 (quoting *Fort Bragg Dependent Schs.*, 343 F.3d at 308). "[T]he ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place." *Reid*, 401 F.3d at 524. A compensatory award cannot be the result of a "cookie cutter approach" that presumes "that each hour without FAPE entitles the student to one hour of compensatory instruction." *Id.* at 523. Instead, there must be a "qualitative, fact-intensive" inquiry "tailored to the unique needs of the disabled student." *Branham v. District of Columbia*, 427 F.3d 7, 9 (D.C. Cir. 2005) (citing *Reid*, 401 F.3d at 524). Relief under the IDEA depends upon "equitable considerations" and requires the court "'to mould each decree to the necessities of the particular case.'" *Reid*, 401 F.3d at 523–24 (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)).

The plaintiff contends that the Hearing Officer failed to consider relevant probative evidence and instead substituted a one-sentence "*ipse dixit*" in favor of the individualized assessment required under *Reid*. *See* Pl.'s Obj. at 3, 13. Specifically, the plaintiff argues that the Hearing Officer arbitrarily selected and ignored relevant evidence and improperly discounted the testimony of her expert witness that the plaintiff should have been entitled to five hours of speech-language services per week from March 19, 2007 through June 2008.[7] As a result,

---

[7] The plaintiff also argues that the Hearing Officer did not appropriately consider the evidence in the record that the plaintiff required specialized reading instruction and improperly failed to receive supplemental testimony regarding compensatory reading instruction. *See* Pl.'s Obj. at 5. The plaintiff thus argues that she was both unlawfully prevented from introducing evidence of the need for reading instruction at the hearing, and that the evidence presented at the hearing regarding the need for reading instruction warrants additional compensatory services. As an initial point, the Court agrees with the Magistrate Judge that the Hearing Officer's decision not to permit the plaintiff to supplement the record was appropriate. *See* Mem. Op. & Order, ECF No. 25 (discussing failure by plaintiff's counsel to present evidence relating to the plaintiff's need for the services of a reading specialist). The plaintiff's alternative argument, that the evidence in the record establishes the need for compensatory reading instruction (in addition to speech-language services) fares no better. *See* Pl.'s Obj. at 26. The plaintiff's argument merely rehashes her complaints with the decision by the Hearing Officer to discount the testimony of Dr. Lucker. As discussed,

according to the plaintiff, the Hearing Officer is entitled to no deference and the Magistrate Judge was required to conduct a full independent examination of the record and apply the *Reid* standard. Consequently, the plaintiff objects to the Report and Recommendation in its entirety. The plaintiff is mistaken, however. As explained in the Report and Recommendation, the Hearing Officer reasonably considered and assessed the probative evidence in order to craft a remedy individually tailored to compensate the needs of this plaintiff.

### A.     The Hearing Officer Appropriately Assessed the Probative Evidence

The Hearing Officer conducted a thorough and reasonable analysis of the evidence and his conclusion that the "preponderance of evidence establishes that . . . the provision of 60 minutes per week of speech-language services . . . would have been reasonably calculated to provide [the plaintiff] educational benefits" is entitled to due weight. AR at 15.

Contrary to the plaintiff's contention, the Hearing Officer did not exclude any evidence from consideration but instead focused his inquiry on the evidence relating to the period from March 2007 through June 2008, the period of time during which the plaintiff was denied a FAPE. Although the plaintiff faults the Hearing Officer for not explicitly consider the plaintiff's test scores from November 2006, AR at 113–123, and January 2008, AR at 166–177, when making his award, those test scores did not provide a recommendation regarding the specific educational services to be provided to the plaintiff. [8] As such, the relative probative value of

---

however, the Hearing Officer acted reasonably in discounting such evidence. Moreover, the Hearing Officer did award relief specifically targeting the plaintiff's reading difficulties. *See* AR at 20 (awarding the plaintiff 96 hours of speech-language services to include instruction relating to "reading comprehension").

[8] Moreover, while the test scores are highly probative of the plaintiff's education level during the relevant period, there was no dispute between the parties that the plaintiff was significantly below grade level during the relevant period. In passing, the plaintiff also laments the Hearing Officer's failure to consider evaluations and reports from 2000-2003, but does not expand on this argument. *See* Pl.'s Obj. at 14. Nonetheless, the Hearing Officer was within reason to conclude that such earlier reports were too attenuated to be probative and were otherwise overshadowed by other probative evidence. *See* AR at 13–15 (focusing assessment on assessments and evaluations from March 2007 through June 2008).

those test scores was less than that of the plaintiff's August 2007 speech-language evaluation, which specifically tested the plaintiff and recommended one hour of speech-language services per week. *See* AR at 124–128 ("[T]his examiner recommends direct speech-language intervention for 60 minutes a week.").

Likewise, the Hearing Officer did not arbitrarily and exclusively rely on the plaintiff's August 2007 speech-language evaluation and September 15, 2008 IEP. As an initial matter, an evaluation and recommendation by a speech language pathologist during the relevant time period is highly probative of the services the plaintiff should have received during that same period of time. Moreover, the Hearing Officer specifically compared the recommendation contained in the August 2007 speech-language evaluation against other probative evidence. Indeed, the Hearing Officer expressly noted the inconsistencies between the level of services to be provided in the plaintiff's September 20, 2007 IEP (one-half hour per week) and the level of services recommended by the plaintiff's August 2007 speech-language evaluation (one hour per week). AR at 14. As a result, the Hearing Officer rejected the plaintiff's September 20, 2007 IEP and instead adopted the one-hour per week recommendation of the August 2007 speech-language evaluation. *Id.* Such analysis was not arbitrary but considered.

The plaintiff also faults the Hearing Officer for considering the plaintiff's September 15, 2008 IEP, which provided for one-hour of speech-language services per week, but not considering the plaintiff's subsequent October 23, 2008 IEP, which increased the increased the number of speech-language services to three hours per week.[9] The October 23, 2008 IEP *was*

---

[9] The plaintiff also argues that the September 15, 2008 IEP is not in the record and should not have been considered by either the Hearing Officer or the Magistrate Judge. *See* Pl.'s Obj. at 14. While the IEP itself is not in the record, the recommendations of the September 15, 2008 IEP can be found in the plaintiff's October 23, 2008 IEP, which is admitted in the record. *See* AR at 181 ("At [the plaintiff's] IEP meeting on [September 15, 2008], her speech and language services were increased to 60 minutes per week.").

*considered* by the Hearing Officer, however. *See* AR at 14 ("[T]he .5 hours per week of speech therapy listed in the IEP . . . was one-sixth the level of speech language services provided in [the] October 23, 2008 IEP."). Nonetheless, the Hearing Officer concluded that based on the information available to him from the relevant time period, the provision of one-hour of speech-language services would be reasonably calculated to provide the plaintiff with educational benefit. This conclusion was supported by the evidence, in a reasoned decision, and is entitled to due weight.

Finally, the plaintiff argues that the Hearing Officer improperly discounted the testimony of the plaintiff's expert, Dr. Lucker. Dr. Lucker testified that "in order to make up for the four years behind or to get to the seventh-grade level, [the plaintiff] would have needed [one] hour a day five days a week of speech language services." AR at 1170. The Hearing Officer "discount[ed] this opinion because [Dr. Lucker] applied an incorrect standard." AR at 14. The IDEA was designed "to open the door of public education to handicapped children on appropriate terms" and not "to guarantee any particular level of education once inside." *Rowley*, 458 U.S. at 192; *see also Kerkam v. McKenzie*, 862 F. 2d 884, 886 (D.C. Cir. 1989) ("[P]roof that loving parents can craft a better program than a state offers does not, alone, entitle them to prevail under the Act."); *Carlisle Area School v. Scott P. ex rel. Bess P.*, 62 F.3d 520, 532 (3d Cir. 1995) ("[T]he district need not provide the *optimal* IEP . . . ." (emphasis in original)); *see also N.T. v. District of Columbia*, 839 F. Supp. 2d 29, 33 (D.D.C. 2012) ("While the District of Columbia is required to provide students with a public education, it does not guarantee any particular outcome or any particular level of education."). *Rowley* requires the provision of an educational environment "reasonably calculated to enable the child to receive educational benefits." 458 U.S. at 207. Dr. Lucker's opinion, by contrast, more closely approximates "the

potential-maximizing standard that *Rowley* forbids." *Kerkam*, 862 F.2d at 889; *see also A.I. ex rel. Iapalucci v. District of Columbia*, 402 F. Supp. 2d 152, 167 (D.D.C. 2005) ("[A] court must not focus on whether the DCPS is maximizing [a plaintiff's] potential through its proposed . . . IEP; rather, the appropriate focus of the court's review should be on whether DCPS is providing [the plaintiff] with an IEP that is reasonably calculated to produce meaningful educational benefit."). The Hearing Officer acted properly in discounting the opinion of the plaintiff's expert regarding the services that should have been provided by DCPS between March 19, 2007 and June 2008.[10]

Consistent with the Report and Recommendation, the plaintiff has failed in her burden of "persuading the court that the Hearing Officer was wrong." *Reid*, 401 F.3d at 521 (internal quotations omitted).

### B. The Compensatory Award Complies with *Reid*

The plaintiff also asserts that the Hearing Officer failed to comply with the requirements of *Reid*, and instead made a compensatory award in a single sentence "*ipse dixit*." *See* Pl.'s Obj. at 13. *Reid* rejected a "cookie cutter approach" that presumes "that each hour without FAPE entitles the student to one hour of compensatory instruction," 401 F.3d at 523, in favor of a "qualitative, fact-intensive" inquiry "tailored to the unique needs of the disabled student." *Branham*, 427 F.3d at 9 (discussing *Reid*). In the present case, the Hearing Officer made the appropriate individualized determination. Rather than merely awarding the plaintiff an hour for each hour that she was denied a FAPE, the Hearing Officer sought to "place [the plaintiff] in the same position [she] would have occupied but for the school district's violations of IDEA." *Reid*, 401 F.3d at 518. Based on the testimony of the plaintiff's expert, the Hearing Officer concluded

---

[10] Importantly, the Hearing Officer did not fail to consider Dr. Lucker's testimony altogether, which is still generally probative of the level of education services needed by the plaintiff. *See* AR at 14.

13

that the plaintiff would need "1.5 hours of services for every hour of services she missed, provided by a professional speech language therapist who has experience with working with older students." AR 17. In addition to reviewing (and accepting) the testimony of the plaintiff's expert, the Hearing Officer also noted that subsequent evaluations continued to increase the number of hourly services recommended for the plaintiff, further suggesting increased difficulties by the plaintiff in learning the material.[11] *Id.* In short, the Hearing Officer rejected a cookie-cutter approach, and instead evaluated the expert testimony and the probative evidence to determine how to place this specific plaintiff in the position she would have occupied but for the failure of DCPS to provide a FAPE. Consistent with the Report and Recommendation, the Hearing Officer's determination complied with *Reid*. The plaintiff has again failed in her burden of "persuading the court that the Hearing Officer was wrong." *Reid*, 401 F.3d at 521 (internal quotations omitted).

## IV. CONCLUSION

For the foregoing reasons, and consistent with the Report and Recommendation, the plaintiff's motion for summary judgment is denied and the defendant's cross-motion for summary judgment is granted. An appropriate Order accompanies this Memorandum Opinion.

Date: March 30, 2015

_____
BERYL A. HOWELL
United States District Judge

---

[11] Although the plaintiff continued to be afforded increased educational services, the Hearing Officer also noted that the plaintiff "has a dismal school attendance record, which undoubtably has negatively affected her academic performance." AR at 18.